IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NOELLE EVANS BALLARD,        )
                             )
            Plaintiff,       )
                             )
       v.                    )       1:14cv112
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social       )
Security,                    )
                             )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Noelle Ballard brought this action pursuant to Section 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have filed cross motions for judgment on the pleadings. (Docs. 8, 10.) For the reasons set forth below, Ms. Ballard's motion will be denied, the Commissioner's motion will be granted, and the case will be dismissed.

## I.   BACKGROUND

Ms. Ballard filed concurrent applications for DIB on May 25, 2010, and SSI on May 27, 2010, alleging disability as of

February 15, 2010.[1] (Tr. at 40, 221–31.)[2] Her application was initially denied and then again rejected upon reconsideration. (Id. at 93–168.) On May 2, 2011, Ms. Ballard requested a *de novo* hearing on her applications before an administrative law judge ("ALJ"). (Id. at 183–84.) Represented by counsel, Ms. Ballard appeared at the hearing on May 1, 2012, at which both she and an impartial vocational expert testified. (Id. at 59–91.) On August 24, 2012, the ALJ issued a decision finding Ms. Ballard not disabled. (Id. at 37–58.) Ms. Ballard appealed to the Appeals Council. (Id. at 35–36.) On October 25, 2013, the Appeals Council denied review, rendering the ALJ's August 24, 2012 decision the Commissioner's final decision for purposes of judicial review. (Id. at 5–11.)

Ms. Ballard filed her complaint with this court on February 6, 2014, seeking review of the Commissioner's decision. (Doc. 1) Ms. Ballard filed a motion for judgment on the pleadings (Doc. 8), to which the Commissioner has not responded. The Commissioner, however, filed a motion for judgment on the

---

[1] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996) (internal citations omitted).

[2] Transcript citations refer to the Sealed Administrative Transcript of Record. (Doc. 6.)

pleadings (Doc. 10), with no response from Ms. Ballard. The time for further briefing on the cross motions has expired, and the motions are now ripe for decision.

## II. STANDARD OF REVIEW

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Rather, "[w]hen examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, the court should not undertake to re-

weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589) (internal brackets omitted). "It is not [the court's] place either to reweigh the evidence or to substitute [its] judgment for that of the [ALJ] if that decision was supported by substantial evidence." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig, 76 F.3d at 589) (internal brackets omitted). Thus, the issue before this court "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In administrative proceedings, the claimant "of course, bears the burden of proving that [s]he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). The SSA defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

4

lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). That five-step process sequentially examines whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472–73.

If a claimant carries her burden at each of the first two steps and also meets her burden of establishing an impairment that meets or equals an impairment listed in the regulations at step three, the claimant is disabled, and there is no need to proceed to steps four or five. See Mastro, 270 F.3d at 177. Alternatively, and as was the case here, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's residual functional capacity

("RFC").³ Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to her prior work, the analysis proceeds to the fifth step, which shifts the burden of proof and requires "the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Hancock, 667 F.3d at 472-73 (quoting Hunter, 993 F.2d at 35) (internal quotation marks omitted). If, at this last step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

**III. ANALYSIS**

In her August 24, 2012 decision, the ALJ concluded that Ms. Ballard had reached and satisfied step four but that the

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that SSA regulations require RFC to reflect a claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

6

Commissioner had satisfied her burden as to step five by producing "jobs that exist in significant numbers in the national economy" that Ms. Ballard could perform given her RFC. (Tr. at 42–52.) In her brief before this court, Ms. Ballard challenges two aspects of the ALJ's decision. First, she argues the ALJ improperly weighed the medical evidence, specifically the opinion of her psychiatrist, Dr. Olin Fox. (Doc. 9 at 2–12.) Second, Ms. Ballard asks this court to review the ALJ's evaluation of her credibility, arguing that the ALJ's analysis "was insufficient." (Id. at 12–18.) Both challenges will be addressed in turn.

A.  **The ALJ's Weighing of Medical Evidence**

Ms. Ballard first argues that the ALJ improperly weighed the medical opinions of her psychiatrist, Dr. Fox. According to Ms. Ballard, the ALJ should have accorded Dr. Fox's medical opinions controlling weight. (Id. at 2–12.) Alternatively, Ms. Ballard contends that, if not accorded controlling weight, Dr. Fox's opinions should have been afforded greater weight than the ALJ provided. (Id.)

Under the SSA's regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

7

evidence in the record." Mastro, 270 F.3d at 178 (citing 20 C.F.R § 416.927). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

In circumstances where the treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, that medical opinion is evaluated pursuant to a non-excusive list, including "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[4] Johnson, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). When evaluating these factors, "[t]he ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence." Id. at 654 n.5. Rather, "the ALJ holds the discretion to give less weight to the testimony of a

---

[4] Ms. Ballard argues that the ALJ erred by ignoring these factors. The only case she relies on for this proposition — Hines — "does not require that an ALJ specifically list" each of the factors in his or her opinion. Vereen v. Astrue, No. 5:10-CV-569, 2011 WL 6780788, at *3 (E.D.N.C. Dec. 27, 2011) ("Hines does not require that an ALJ specifically list each of the Hines factors in his or her opinion, nor does plaintiff cite any authority that would suggest as much."). The ALJ also clearly states in her opinion that she "considered evidence in accordance with the requirements of 20 CFR 404.1537," which memorialize the Hines factors. (Tr. at 46.)

8

treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

Here, the ALJ determined that Dr. Fox's medical opinions should be given less weight than other contrary evidence. (Tr. at 49.) The ALJ noted that Dr. Fox's opinions were inconsistent with the underlying record and thus not accorded controlling weight. (Id.) Thus, the ALJ concluded that the doctor's opinions should not be given great weight. (Id.) Substantial evidence supports the ALJ's conclusion to afford Dr. Fox's medical opinion less weight.

As the ALJ observed, the limitations Dr. Fox assigned to Ms. Ballard exceeded those documented in his records. For one, although Dr. Fox diagnosed Ms. Ballard with post-traumatic stress disorder (PTSD) (id. at 832), the ALJ accurately noted Dr. Fox's treatment notes lacked any mention of PTSD (id. at 49). Ms. Ballard provides no citation contradicting the ALJ's conclusion. In fact, reinforcing the ALJ's conclusion that Dr. Fox's treatment notes contained no mention of PTSD, Ms. Ballard points to only two pages of the record to contradict the ALJ's decision, and both of her citations are of *other doctors'* treatment notes — not Dr. Fox's. (Doc. 9 at 9.) This notable lack of evidence only further supports the ALJ's conclusion.

Second, although the ALJ credited Dr. Fox's diagnosis of bipolar disorder and depression, the ALJ discounted his medical

9

opinions for "endors[ing] limitations . . . in excess of those documented in his records and reflect[ing] [Ms. Ballard's] self-reporting." (Tr. at 49.) As the ALJ observed, Dr. Fox's treatment notes showed that Ms. Ballard's conditions mainly related to "situational stress" caused by problems within her family, suggesting the absence of a disabling mental condition. (Id. at 840; see, e.g., id. at 770, 844, 846, 871, 879, 893); see also Cagle v. Colvin, No. 2:12-CV-1906, 2013 WL 4049664, at *2 (E.D. Cal. Aug. 9, 2013) (noting that claimant's anxiety appeared to be "situational, centering upon family problems, and not related to clinical anxiety"); Standhardt v. Astrue, No. 10-3535-CV-S-JCE-SSA, 2012 WL 997136, at *8 (W.D. Mo. Mar. 23, 2012) ("While plaintiff apparently had family problems that caused her stress, anxiety, and difficulty getting along, there is nothing in the medical records as a whole to suggest that she suffered from a totally disabling mental impairment."). Dr. Fox's treatment notes also regularly identified normal appearance, regular orientation, normal attention, normal concentration, normal judgment, and normal memory, as well as thought organization that was normal, goal directed, linear, and logical. (See, e.g., Tr. at 661, 864, 869); see also Hayes v. Astrue, No. CIV.A. 2:09CV00043, 2010 WL 1904965, at *9 (W.D. Va. May 12, 2010) (citing doctor's findings of normal judgment, normal memory, and full orientation as evidence of no disabling

mental condition despite depression diagnosis), report and recommendation adopted sub nom. Hayes v. Comm'r of Soc. Sec., No. 2:09CV00043, 2010 WL 2232124 (W.D. Va. June 2, 2010).

Finally, Dr. Fox's endorsed limitations conflicted with his global assessment of functioning ("GAF") scores assigned Ms. Ballard, which largely indicated less severe symptoms connected to, and less difficulty with, social interaction.[5] (Tr. at 49 (citing id. at 430, 475, 573–74, 606, 620, 642, 832, 914); see also id. at 624, 632, 808); see also Brooks v. Comm'r, Soc. Sec. Admin., No. CIV. SAG-13-2218, 2014 WL 4461489, at *2 (D. Md. Sept. 9, 2014) ("[N]othing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record."); Kozel v. Astrue, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform the ALJ's judgment."). Substantial evidence thus both supports the ALJ's finding of inconsistency in Dr. Fox's opinions and permitted the accordance of less weight to those opinions.

---

[5] GAF scores represent "a 'clinician's judgment of the individual's overall level of functioning.'" Clemins v. Astrue, No. 5:13cv47, 2014 WL 4093424, at *1 (W.D. Va. Aug. 18, 2014) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It appears that the most recent edition of the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders no longer recommends use of GAF scores as a diagnostic tool. See id. at *1 n.2 (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013)).

Ms. Ballard further attacks the ALJ's conclusion to discount Dr. Fox's opinions by arguing that the ALJ "relied heavily on the opinions from the non-treating, non-examining state agency psychologists" in contradiction of Fourth Circuit law. (Doc. 9 at 9–10.) This argument is meritless. The Fourth Circuit has held that exclusive reliance on state psychologists' testimony without explanations as to why those opinions merit weight does not constitute substantial evidence. See Radford v. Colvin, 734 F.3d 288, 295–96 (4th Cir. 2013). Here, the ALJ explicitly states that she granted the state psychologists' opinions only "partial weight" as to their physical assessments and "great weight" as to their mental assessments of Ms. Ballard. (Tr. at 48–49.) The ALJ's opinion gives no indication that she relied exclusively on those opinions for her conclusion regarding Dr. Fox. Moreover, the ALJ explained that the reason she gave those opinions weight was the consistency between the state psychologists' opinions and Ms. Ballard's treatment notes and hospitalization records. (Id. at 49 (citing id. at 93–109, 129–44).) The ALJ, therefore, only partially relied on the state psychologists' opinions and provided reasons for the weight afforded them.

Ms. Ballard finally protests that, in her view, the ALJ rejected Dr. Fox's opinions on the grounds that the determination of disability is "reserved to the Commissioner."

12

(Doc. 9 at 10 (quoting Tr. at 49).) This is a misreading of the ALJ's decision. The ALJ only rejected Dr. Fox's medical opinion to the extent the doctor concluded that Ms. Ballard was "disabled" or "unable to work. (Tr. at 49; see also id. at 838 (stating that Ms. Ballard was "unable to hold any sort of job").) An ALJ need consider, but need not give weight to, such a conclusion. See 20 C.F.R. § 404.1527(d) (noting that opinions that claimant is disabled or unable to work are "opinions on issues reserved to the Commissioner"); Social Security Rule 96-5p at *2-3 (stating that "treating source opinion on issues reserved to the Commissioner are never entitled to controlling weight or special significance" but noting that such opinions "must never be ignored"); see also Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (holding that the ALJ "was permitted to disregard [physician's] conclusory statement" that claimant was "disabled" when unsupported by factual record); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (concluding that the ALJ was not required to weigh physician's conclusion that claimant was "disabled" under 20 C.F.R. § 404.1527); Miller v. Callahan, 964 F. Supp. 939, 951 (D. Md. 1997) (observing that the ALJ "acted correctly in rejecting the doctor's opinion as to" whether the claimant was disabled). The ALJ also did not disregard Dr. Fox's conclusion and medical opinions as to Ms. Ballard's employability and functional limitations. She

13

considered those opinions, observing, "The undersigned has considered Dr. Fox's opinions regarding the claimant's employability and functional limitations." (Tr. at 49 (citing a summary of Dr. Fox's opinions).) By not giving "great weight" to Dr. Fox's medical opinions, however, the ALJ — for the reasons addressed above — had substantial evidence to assign no weight to Dr. Fox's conclusion that Ms. Ballard was disabled.

**B. The ALJ's Evaluation of Ms. Ballard**

Ms. Ballard's second challenge criticizes the ALJ's evaluation of her subjective complaints of pain. In accordance with SSA regulations, the Fourth Circuit evaluates a claimant's subjective complaints of pain through a two-step process. First, the claimant must make "a showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594 (internal quotation marks omitted). "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment . . . which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." Id.

Second, if the claimant meets that initial threshold, the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability

to work." Id. at 595. The ALJ's determination at this second step must take into account all "available evidence," including the claimant's medical history, medical signs, laboratory findings, any objective medical evidence of pain, the claimant's daily activities, specific descriptions of the pain, and medical treatment received or taken to alleviate the pain. Id. Importantly, the absence of corroborating objective evidence of pain may not serve as the sole basis for dismissal, but that evidence is nonetheless "crucial" to evaluating a claimant's subjective claims of pain. Id. Finally, while "a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." Id.

In evaluating the credibility of a claimant's subjective complaints, an ALJ "should refer specifically to the evidence informing the ALJ's conclusion." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The ALJ's conclusions as to a claimant's credibility, however, should be given "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "Because credibility determinations are peculiarly within the province of the ALJ, a reviewing court will not upset credibility determinations supported by substantial evidence." Eaton v. Astrue, No. CIV. JKS-11-2497, 2012 WL 3241042, at *7 (D. Md.

15

Aug. 6, 2012) (citing Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994)).

Here, Ms. Ballard complained of depression, panic attacks, lower back, knee, and neck pain, headaches, and muscle spasms. (Tr. at 69, 70–76.) She further testified that the physical pain was "constant." (Id. at 71–73.) The ALJ found that Ms. Ballard's testimony regarding the severity, persistence, and limiting effects of her symptoms lacked credibility. Importantly, the ALJ did not find that Ms. Ballard's subjective assertions of pain entirely lacked credibility; rather, she concluded only that Ms. Ballard's testimony concerning the severity, persistence, and limiting effects of her symptoms lacked credibility "to the extent that [it was] inconsistent with the . . . residual functional capacity assessment." (Id. at 47.) In support of her conclusion, the ALJ noted that Ms. Ballard's allegations were not consistent with medical records indicating medical improvement, a third-party report from a friend reflecting "greater functioning" than Ms. Ballard admitted, and other medical evidence in the record. (Id. at 50.) Ms. Ballard contends that the ALJ's determination was "conclusory" and lacked sufficient analysis. (Doc. 9 at 15–18.) Substantial evidence, however, supports the ALJ's adverse credibility determination in this case.

In support of her contention that the ALJ's analysis was insufficient, Ms. Ballard first argues that the ALJ "fail[ed] to cite to any specific evidence that Ms. Ballard significantly improved with treatment" to demonstrate inconsistency with the available evidence. (Id. at 15.) This argument is simply untrue. Despite Ms. Ballard's complaints of persistent physical pain, the ALJ accurately observed that Ms. Ballard had responded relatively well to medication and treatment. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ specifically noted that Ms. Ballard's therapy records indicated improvement in her condition "with a corresponding decrease in pain" within less than a month of treatment, which was inconsistent with Ms. Ballard's allegations regarding the severity and persistence of her musculoskeletal pain in her back, neck, and knee. (Tr. at 48; see also id. at 998 ("Pain has decreased."); id. at 999 ("P[atien]t has shown improvement with both pain and balance."); id. at 1013 ("I haven't needed any pain medication the last few days.").) Ms. Ballard offers no argument as to how the physical improvement noted by the ALJ is consistent with her allegations of constant, unimproved physical pain. (Doc. 9 at 15–16.)

Moreover, despite Ms. Ballard's complaints of migraine headaches, the ALJ accurately noted that the medical evidence

17

revealed little evidence of debilitating headaches. (Tr. at 43 (observing that medical record revealed "minimal, if any," treatment for headaches).) Substantial evidence thus existed to support the ALJ's conclusion that Ms. Ballard's subjective complaints of pain were not credible.

Second, Ms. Ballard contends that the ALJ's reliance on her ability to perform normal daily activities "put a significant gloss" on her limitations and that her testimony was consistent with "the underlying record." (Doc. 9 at 17–18.) Ms. Ballard, however, provides no record citation to support this assertion of consistency between the evidence cited by the ALJ and the remainder of the record. See Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."); see also Nw. Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662–63 (7th Cir. 1994) (observing that district court judges "need not excavate masses of paper in search of revealing tidbits").

Moreover, the ALJ noted record evidence of Ms. Ballard's daily activities that was inconsistent with her statements about her mental and physical impairments. See Wilkerson v. Colvin, No. CIV. TMD 13-1723, 2014 WL 1954917, at *7 (D. Md. May 14, 2014) ("A claimant's daily living activities can provide substantial evidence to discount the claimant's credibility.").

18

Citing a third-party function report, the ALJ considered that Ms. Ballard's long-time friend observed Ms. Ballard performing a "wide range of daily activities." (Tr. at 50.) The friend's report noted that Ms. Ballard's daily functionality included watching television, cooking complete meals, doing laundry, shopping, paying bills, handling savings and checking accounts, and spending time on the computer. (Id.; see also id. at 265, 267–69.) The report further stated that Ms. Ballard drives twice a week, texts on her cell phone, and chats with friends on Facebook or Myspace "almost every day." (Id. at 268–69; see also id. at 50.) According to her friend, Ms. Ballard performs many of those activities "well." (Id. at 269.) Contrary to Ms. Ballard's contention, substantial evidence again supported the Commissioner's conclusion that Ms. Ballard's subjective complaints of pain were not fully credible. See Johnson, 434 F.3d at 658 (finding that a claimant's daily activities, such as watching television, cleaning the house, doing laundry, cooking, and managing her household finances were inconsistent with claimant's complaints of pain); Gross, 785 F.2d at 1166 (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, and washed dishes); Rahe v. Astrue, 840 F. Supp. 2d 1119, 1136 (N.D. Iowa 2011) (finding that substantial evidence of claimant's reported activities supported adverse credibility determination of ALJ, who found

19

that claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"). In sum, substantial evidence — inconsistent with Ms. Ballard's subjective complaints of pain — supports the ALJ's finding as to Ms. Ballard's credibility.

## IV. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Ms. Ballard's motion for judgment on the pleadings (Doc. 8) be DENIED, that the Commissioner's motion for judgment on the pleadings (Doc. 10) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder<br>
United States District Judge

February 27, 2015